**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| THE PHELAN GROUP, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 2:23-cv-94 |
| v. | § | |
| | § | |
| KIA CORPORATION and KIA AMERICA, | § | **JURY TRIAL DEMANDED** |
| INC. | § | |
| | § | |
| *Defendants.* | § | |

## ORIGINAL COMPLAINT

Plaintiff The Phelan Group, LLC ("Plaintiff" or "Phelan Group"), by and through its attorneys, for its Original Complaint against Kia Corporation and Kia America, Inc. (collectively, "Kia" or "Defendants"), and demanding trial by jury, hereby alleges as follows:

## I. NATURE OF THE ACTION

1.      This is a civil action for patent infringement, arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

2.      Defendants design, manufacture, provide, use, sell, offer for sale, import, and/or distribute vehicles and components thereof in the State of Texas and this District that infringe the Patents-in-Suit (as defined below), induce others to commit acts of patent infringement in the State of Texas and this District, and/or contribute to infringement by others in the State of Texas and this District.

3.      Phelan Group seeks past and future damages and prejudgment and post-judgment interest for Defendants' infringement of the Patents-in-Suit.

## II. PARTIES

4.     Phelan Group is a limited liability company organized and existing under the laws of the State of New Mexico.

5.     On information and belief, Defendant Kia Corporation ("Kia Corp.") is a Korean corporation with its principal place of business at 12 Heolleung-ro, Seocho-gu, Seoul, 06797, Republic of Korea. On information and belief, Kia Corp. does business itself, or through its subsidiaries, affiliates, and agents in the State of Texas and in this District.

6.     Kia Corp. may be served with process by serving the Texas Secretary of State, James E. Rudder Building, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas, and this action arises out of that business, but has not designated or maintained a resident agent for service of process in Texas as required by statute.

7.     On information and belief, Kia America, Inc. ("Kia America") is a corporation organized and existing under the laws of California with its principal place of business in this District at its Southwest Region headquarters at 5810 Tennyson Parkway, Plano, Texas 75024. Kia America may be served through it registered agent CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201. On information and belief, Kia America is registered to do business in the State of Texas and has been since at least May 26, 1994.

8.     On information and belief, Kia America is a wholly-owned subsidiary of Kia Corp. and is responsible for, *inter alia*, all operations of Kia Corp. in the United States, including research and development, importing, making, manufacturing, marketing, distributing, offering for sale, and selling automotive vehicles and components from Kia-managed brands.

9.     On information and belief, Kia America maintains dealerships throughout this District as its regular and established places of business, at which Kia has committed acts of infringement and placed the Accused Products and Methods into the stream of commerce,

including, at least: Central Kia of Plano, Premier Kia, Peltier Kia Longview, Peltier Kia Tyler, and Classic Kia.

### III. JURISDICTION AND VENUE

10. Because this action arises under the Patent Laws of the United States, in particular 35 U.S.C. §271 *et seq.*, this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 1338(a).

11. Kia Corp. is subject to jurisdiction in the United States, and specifically in this District, under Fed. R. Civ. P. 4(k)(2). Kia Corp. has contacts with the United States that include, *inter alia*, advertising, offering to sell, selling, and/or importing its vehicles and components thereof throughout the United States, including in this District and the patent infringement claims asserted herein arise directly from Kia Corp.'s conduct and continuous and systematic activity in the State of Texas and this District.

12. This Court also has personal jurisdiction over Kia America because, among other things, (i) Kia America maintains a regular and established place of business in the State of Texas and in this District; (ii) Kia America employs employees and sells products and services to customers in the State of Texas and in this District; and (iii) the patent infringement claims arise directly from Kia America's conduct and continuous and systematic activity in the State of Texas and this District.

13. This Court has general and/or specific personal jurisdiction over all Defendants in that they have, directly or through agents and/or intermediaries, committed acts within the State of Texas and this District giving rise to this action and/or have established minimum contacts with the State of Texas and this District such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

14.    Upon information and belief, Defendants directly and/or through their agents and/or intermediaries make, use, design, manufacture, distribute, import, offer for sale, sell, and/or advertise their vehicles and components and affiliated services thereof in the State of Texas and this District.

15.    Further, on information and belief, Defendants have placed, and continue to place, infringing vehicles and components thereof into the stream of commerce, through an established distribution channel, with the knowledge and/or understanding that such vehicles and components thereof are sold in this United States, including in the State of Texas and specifically in this District.

16.    Defendants transact substantial business with entities and individuals in the State of Texas and in this District.

17.    Defendants have committed acts of patent infringement within the State of Texas and this District.

18.    On information and belief, Defendants derive, and have derived, substantial revenue from their infringing activity occurring in the State of Texas and within this District and/or should reasonably expect their actions to have consequences in this State of Texas and this District.

19.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1331, 1338(a), 1391(b), (c), & (d), and 1400(b) because Defendants either maintain a place of business in the District or are foreign corporations who may be sued in any judicial district.  Moreover, a substantial part of the events and omissions giving rise to the claims at issue occurred in this District, including sale of the infringing vehicles and components thereof.

## IV. BACKGROUND

<u>PATENTS-IN-SUIT</u>

20.     Over the past ten years, the United States Patent and Trademark Office has awarded at least seven patents to Michael Phelan that have been assigned to Phelan Group, including the six Patents-in-Suit, thereby recognizing the many discoveries made by Michael Phelan relating to systems and methods for authenticating a driver and controlling and/or monitoring the usage of a vehicle.

21.     Phelan Group is an operating company that has been actively developing and commercializing products under the brand name RideBeside.  Phelan Group's products are based on the inventions disclosed in Phelan Group's patents and, among other things, are aimed toward driver safety and training.  Initial product configurations are in road testing and are configured to help drivers form safer driving habits by providing real time feedback regarding driving decisions.

22.     Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 9,045,101 (the "'101 Patent," attached as **Exhibit 1**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on June 2, 2015.

23.     Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 9,493,149 (the "'149 Patent," attached as **Exhibit 2**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued November 15, 2016.

24.     Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 9,908,508 (the "'508 Patent," attached as **Exhibit 3**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on March 6, 2018.

25.     Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 10,259,465 (the "'465 Patent," attached as **Exhibit 4**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on April 16, 2019.

26.     Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 10,259,470 (the "'470 Patent," attached as **Exhibit 5**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on April 16, 2019.

27.     Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 11,352,020 (the "'020 Patent," attached as **Exhibit 6**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on June 7, 2022.

28.     Together, the foregoing patents are referred to herein as the "Patents-in-Suit." Phelan Group is the assignee of the Patents-in-Suit and has all rights to sue for infringement and collect past and future damages for the infringement thereof.

## DEFENDANTS' ACTS

29.     Defendants make, use, sell, offer for sale, distribute, and/or import vehicles and components of vehicles that have systems and methods for driver authentication and monitoring and controlling vehicle usage as either a standard and/or optional feature, including (but not limited to) Kia Drive Wise and Kia Connect (formerly UVO). These vehicles include (but are not limited to) the 2023 Kia Niro. The Kia vehicles that come equipped with, for example, Kia Drive Wise and Kia Connect utilize, without authorization or license, the inventions disclosed in the Patents-in-Suit. The Accused Products and Methods in this case encompass all Kia vehicles (model year 2015-present) with Kia Drive Wise and Kia Connect, as well as all other advanced driver assistance systems ("ADAS") and driver authentication systems that operate in a materially similar manner.

30.     By way of illustration only, the 2023 Kia Niro equipped with Kia Drive Wise and Kia Connect meets each and every element of one or more claims of the Patents-in-Suit, including at least claim 1 of each of the Patents-in-Suit.

31.     The 2023 Niro equipped with Kia Drive Wise and Kia Connect includes a suite of systems, features, and/or technology for driver authentication, active safety technologies and

ADAS designed to help address accident protection, including, *inter alia*, preventing or mitigating collisions and enhancing safe driving, data recordation including time and speed, alarm generation, specified operational parameters, and operational control of the vehicle including when operational parameters are violated.

32.     On information and belief, Kia Drive Wise and Kia Connect available in other Kia models (and vehicles of other model years) function in materially the same manner, and so those vehicles also infringe each of the Patents-in-Suit.

33.     Kia Connect (including the Kia Access App and Kia Digital Key 2 Touch) provides driver authentication and monitoring and controlling of usage of Kia vehicles, including as shown below.

34.     Kia employs Kia Connect and Kia Digital Key 2 Touch as an authorization method(s). Kia Digital Key 2 Touch authorizes one or more vehicle users and lets an authorized user(s) control select features of a Kia vehicle, including the 2023 Kia Niro using a smartphone with the Kia Access App. Digital Key 2 Touch technology allows a user to access (e.g., unlock, lock, start) a Kia vehicle through the Kia Access App.[1]

35.     With Remote Connect, authorized users (including a primary driver and/or [an] authorized remote driver(s)) can control select features of a Kia vehicle, including without limitation locking and unlocking doors and starting the vehicle.[2]

36.     Kia Connect includes, *inter alia*, settings which allows a user to define driving limits for drivers (such as valets, kids, etc.), including at least speed limit, curfew, and area limit

---

[1] *See, e.g.*,
https://sweb.owners.kia.us/content/dam/kia/us/owners/pdf/common/Kia_Digital_Key_2_Touch_User_Guide.pdf.

[2] *See, e.g.*, https://owners.kia.com/content/owners/en/uvo-compare-packages.html;
https://www.kiamilwaukee.com/kia-uvo-features-and-guide/#uvotypes.

and/or distance limit from set location.[3] Kia Connect provides alerts, which notify the primary driver with push notification alerts if a defined limit for the driver has been violated.[4]

> • *My Car Zone Features: Curfew Alerts, Geo-Fence, & Speed Watch*. Kia Connect Services may allow you or others (such as in the case of a parent about a child driver of the Vehicle) to obtain information about a Vehicle's location and other Vehicle information, including the speed the Vehicle was driven. Through Kia Connect Services Hardware or your KOP Account or the Kia Connect Services App, you can opt through the settings to use certain features available for your Vehicle through the My Car Zone such as the curfew alert, geo-fence and speed watch features. These features will collect information about the Vehicle's location even if someone other than you is driving or occupying the Vehicle. For example, a parent who purchases a Vehicle for their child to use that includes this feature can set preferences and controls that will collect information about their child's driving habits, such as when the Vehicle is being driven and whether the Vehicle is being driven beyond a pre-determined speed limit or boundary location. You understand that when you use any of these features, this Vehicle information may be stored and accessible on your KOP Account in the My Trips feature portion of Kia Connect Services and you may also receive a detailed alert on your Device, depending on the Kia Connect Services available.

37.     Kia Drive Wise provides monitoring and operational control of Kia vehicles, including as shown below.

38.     For example, Kia Drive Wise includes various advanced driver assistance systems (ADAS), components, and features, including (but not limited to) Auto Emergency Braking Technology (Forward Collision Warning & Forward Collision-Avoidance Assist), Blind-Spot Collision-Avoidance Assist & Blind-Spot Collision Warning, Rear Cross-Traffic Warning and Avoidance Technology (Rear Cross-Traffic Collision-Avoidance Assist), Smart Cruise Control w/ Stop & Go, Parking Collision-Avoidance Assist-Reverse, Pre-Collison System with Pedestrian Detection, Dynamic Radar Cruise Control or Full-Speed Range Dynamic Radar Cruise Control, Lane Departure Alert with Steering Assist, Road Sign Assist, and/or Lane Tracing Assist.

39.     Auto Emergency Braking Technology w/ Pedestrian, Cyclist & Junction Turning Technology (Forward Collision Warning & Forward Collision-Avoidance Assist) is designed to

---

[3] *See, e.g.*, https://owners.kia.com/content/dam/kia/us/owners/pdf/common/UVOlink-Feature.pdf.
[4] *See, e.g.*, https://owners.kia.com/content/owners/en/privacy-policy.html.

"detect potential collisions and apply the brakes." Blind-Spot Collision-Avoidance Assist & Blind-Spot Collision Warning is designed to detect "objects in [the driver's] blind spot, giving the driver visual and/or audible signals to help warn of detected objects outside the driver's field of view." Further, "[i[f the system determines that the driver is trying to change lanes while an object is detected, it will help maintain the previous course by helping the vehicle return to its lane." Rear Cross-Traffic Warning and Avoidance Technology (Rear Cross-Traffic Collision-Avoidance Assist) is designed to warn the driver if vehicle cross traffic is detected and, if necessary, "automatically apply the brakes." Smart Cruise Control w/ Stop & Go is designed to "maintain a predetermined following distance from the detected vehicle in front, adjusting driving speed as needed and can bring the vehicle to a complete stop and start again within 3 seconds of stopping." Parking Collision-Avoidance Assist-Reverse is designed to "issue audible and visual warnings" if the system detects certain objects behind the vehicle and to "apply brakes automatically" if the system detects an object getting extremely close. Pre-Collison System with Pedestrian Detection, Dynamic Radar Cruise Control or Full-Speed Range Dynamic Radar Cruise Control, Lane Departure Alert with Steering Assist, Road Sign Assist, and/or Lane Tracing Assist.[5]

40.     On information and belief, Kia vehicles equipped with Kia Drive Wise and Kia Connect, including the 2023 Niro, use, store, record, and secure vehicle data, including (but not limited to) speed and location information.[6]

41.     On information and belief, Kia (and its customers) deploy the Accused Products and Methods on networks in combination with other products. The specific code portions and

---

[5] *See, e.g.*, https://www.kia.com/us/en/adas.
[6] *See* https://owners.kia.com/content/owners/en/privacy-policy.html.

modules directed to the infringing functionality will be identified from those systems as they are made available for inspection and review by Phelan Group.

42. On information of belief, Kia also implements contractual protections in the form of license and use restrictions with its customers to preclude the unauthorized reproduction, distribution, and modification of its software.

43. Moreover, on information and belief, Kia implements technical precautions to attempt to thwart customers who would circumvent the intended operation of Kia products.

44. Phelan Group has not obtained discovery about Kia infringement and the Court has not construed the meaning of any claims or terms in the Patents-in-Suit. The factual allegations provided in this Complaint are illustrative and without prejudice to Phelan Group's final infringement contentions. Further, in providing these allegations, Phelan Group is not implying any particular claim construction or claim scope.

## V. COUNTS OF PATENT INFRINGEMENT

### COUNT ONE
#### INFRINGEMENT OF U.S. PATENT NO. 9,045,101

45. Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

46. Phelan Group is the assignee and owner of all right, title, and interest to the '101 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

47. On information and belief, Kia, without authorization or license, has been and is presently directly infringing one or more claims of the '101 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using

(including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

48.     Kia has been aware of the '101 Patent, and of its infringement of the '101 Patent, no later than the date this Complaint was served.

49.     On information and belief, at least since the date upon which Kia learned of the '101 Patent, Kia, without authorization or license, has been and is presently indirectly infringing one or more claims of the '101 Patent, including at least claim 1 of the '101 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

50.     On information and belief, Kia has been and is presently actively inducing infringement of the '101 Patent, including at least claim 1, under 35 U.S.C. § 271(b).  Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Kia induces these third parties to directly infringe the '101 Patent because Kia's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '101 Patent.  Kia further induces these third parties to directly infringe the '101 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '101 Patent.

51.     On information and belief, Kia has been and is presently indirectly infringing the '101 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to

infringement of the '101 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Kia has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '101 Patent. Kia knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '101 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

52. At least since the date upon which Kia learned of the '101 Patent, Kia has willfully infringed the '101 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '101 Patent.

53. As a result of Kia's infringement of the '101 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT TWO
INFRINGEMENT OF U.S. PATENT NO. 9,493,149

54. Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

55. Phelan Group is the assignee and owner of all right, title, and interest to the '149 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

56. On information and belief, Kia, without authorization or license, has been and is presently directly infringing one or more claims of the '149 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using

(including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

57.     Kia has been aware of the '149 Patent, and of its infringement of the '149 Patent, no later than the date this Complaint was served.

58.     On information and belief, at least since the date upon which Kia learned of the '149 Patent, Kia, without authorization or license, has been and is presently indirectly infringing one or more claims of the '149 Patent, including at least claim 1 of the '149 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

59.     On information and belief, Kia has been and is presently actively inducing infringement of the '149 Patent, including at least claim 1, under 35 U.S.C. § 271(b).  Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Kia induces these third parties to directly infringe the '149 Patent because Kia's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '149 Patent.  Kia further induces these third parties to directly infringe the '149 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '149 Patent.

60.     On information and belief, Kia has been and is presently indirectly infringing the '149 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to

infringement of the '149 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Kia has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '149 Patent. Kia knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '149 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

61.     At least since the date upon which Kia learned of the '149 Patent, Kia has willfully infringed the '149 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '149 Patent.

62.     As a result of Kia's infringement of the '149 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT THREE
INFRINGEMENT OF U.S. PATENT NO. 9,908,508

63.     Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

64.     Phelan Group is the assignee and owner of all right, title, and interest to the '508 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

65.     On information and belief, Kia, without authorization or license, has been and is presently directly infringing one or more claims of the '508 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using

(including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

66.    Kia has been aware of the '508 Patent, and of its infringement of the '508 Patent, no later than the date this Complaint was served.

67.    On information and belief, at least since the date upon which Kia learned of the '508 Patent, Kia, without authorization or license, has been and is presently indirectly infringing one or more claims of the '508 Patent, including at least claim 1 of the '508 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

68.    On information and belief, Kia has been and is presently actively inducing infringement of the '508 Patent, including at least claim 1, under 35 U.S.C. § 271(b).  Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Kia induces these third parties to directly infringe the '508 Patent because Kia's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '508 Patent.  Kia further induces these third parties to directly infringe the '508 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '508 Patent.

69.    On information and belief, Kia has been and is presently indirectly infringing the '508 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to

infringement of the '508 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Kia has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '508 Patent. Kia knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '508 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

70. At least since the date upon which Kia learned of the '508 Patent, Kia has willfully infringed the '508 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '508 Patent.

71. As a result of Kia's infringement of the '508 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT FOUR
INFRINGEMENT OF U.S. PATENT NO. 10,259,465

72. Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

73. Phelan Group is the assignee and owner of all right, title, and interest to the '465 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

74. On information and belief, Kia, without authorization or license, has been and is presently directly infringing one or more claims of the '465 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using

(including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

75. Kia has been aware of the '465 Patent, and of its infringement of the '465 Patent, no later than the date this Complaint was served.

76. On information and belief, at least since the date upon which Kia learned of the '465 Patent, Kia, without authorization or license, has been and is presently indirectly infringing one or more claims of the '465 Patent, including at least claim 1 of the '465 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

77. On information and belief, Kia has been and is presently actively inducing infringement of the '465 Patent, including at least claim 1, under 35 U.S.C. § 271(b). Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods. Kia induces these third parties to directly infringe the '465 Patent because Kia's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '465 Patent. Kia further induces these third parties to directly infringe the '465 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '465 Patent.

78. On information and belief, Kia has been and is presently indirectly infringing the '465 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to

infringement of the '465 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Kia has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '465 Patent. Kia knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '465 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

79. At least since the date upon which Kia learned of the '465 Patent, Kia has willfully infringed the '465 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '465 Patent.

80. As a result of Kia's infringement of the '465 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT FIVE
INFRINGEMENT OF U.S. PATENT NO. 10,259,470

81. Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

82. Phelan Group is the assignee and owner of all right, title, and interest to the '470 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

83. On information and belief, Kia, without authorization or license, has been and is presently directly infringing one or more claims of the '470 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using

(including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

84.     Kia has been aware of the '470 Patent, and of its infringement of the '470 Patent, no later than the date this Complaint was served.

85.     On information and belief, at least since the date upon which Kia learned of the '470 Patent, Kia, without authorization or license, has been and is presently indirectly infringing one or more claims of the '470 Patent, including at least claim 1 of the '470 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

86.     On information and belief, Kia has been and is presently actively inducing infringement of the '470 Patent, including at least claim 1, under 35 U.S.C. § 271(b).  Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Kia induces these third parties to directly infringe the '470 Patent because Kia's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '470 Patent.  Kia further induces these third parties to directly infringe the '470 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '470 Patent.

87.     On information and belief, Kia has been and is presently indirectly infringing the '470 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to

infringement of the '470 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Kia has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '470 Patent. Kia knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '470 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

88. At least since the date upon which Kia learned of the '470 Patent, Kia has willfully infringed the '470 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '470 Patent.

89. As a result of Kia's infringement of the '470 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT SIX
INFRINGEMENT OF U.S. PATENT NO. 11,352,020

90. Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

91. Phelan Group is the assignee and owner of all right, title, and interest to the '020 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

92. On information and belief, Kia, without authorization or license, has been and is presently directly infringing one or more claims of the '020 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using

(including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

93.     Kia has been aware of the '020 Patent, and of its infringement of the '020 Patent, no later than the date this Complaint was served.

94.     On information and belief, at least since the date upon which Kia learned of the '020 Patent, Kia, without authorization or license, has been and is presently indirectly infringing one or more claims of the '020 Patent, including at least claim 1 of the '020 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

95.     On information and belief, Kia has been and is presently actively inducing infringement of the '020 Patent, including at least claim 1, under 35 U.S.C. § 271(b).  Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Kia induces these third parties to directly infringe the '020 Patent because Kia's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '020 Patent.  Kia further induces these third parties to directly infringe the '020 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '020 Patent.

96.     On information and belief, Kia has been and is presently indirectly infringing the '020 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to

infringement of the '020 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Kia has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '020 Patent. Kia knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '020 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

97. At least since the date upon which Kia learned of the '020 Patent, Kia has willfully infringed the '020 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '020 Patent.

98. As a result of Kia's infringement of the '020 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

## VI.    JURY DEMAND

99. Phelan Group respectfully demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Phelan Group respectfully requests that this Court enter judgment in its favor and grant the following relief against Defendants:

A.     Judgment that Kia infringed and continues to infringe one or more claims of each of the Patents-in-Suit;

B.     Judgment that Kia's infringement was and is willful;

C.    Award Phelan Group damages in an amount adequate to compensate Phelan Group for Kia's infringement of the Patents-in-Suit, and in no event less than a reasonable royalty, together with prejudgment and post-judgment interest, and an ongoing royalty for continued infringement;

D.    Award Phelan Group treble damages in light of Kia's willful infringement;

E.    Enter an order finding this to be an exceptional case and award Phelan Group its reasonable attorneys' fees under 35 U.S.C. § 285;

F.    Award Phelan Group its costs of suit; and

G.    Award Phelan Group such other relief as the Court deems just and proper under the circumstances.

DATED: March 7, 2023                    Respectfully submitted,

*/s/ Andrew DiNovo*
Andrew G. DiNovo
Texas State Bar No. 00790594
adinovo@dinovoprice.com
Nicole E. Glauser
Texas State Bar No. 24050694
nglauser@dinovoprice.com
Adam G. Price
Texas State Bar No. 24027750
aprice@dinovoprice.com
**DINOVO PRICE LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile:  (512) 539-2627

**COUNSEL FOR PLAINTIFF
THE PHELAN GROUP LLC**